UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER SCOTT MERRILL,

      Plaintiff,

v.

KING, MARK COOKS, STACY
LINDAHL, and JOHN DOE,

      Defendants.

_____/

Case No. 2:22-cv-10541
District Judge Linda V. Parker
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO DENY DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 20, 23)[1]

### I.     Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff

Christopher Merrill (Merrill), currently incarcerated at the Central Michigan

Correctional Facility (STF) in St. Louis, Michigan, filed a *pro se* complaint on

March 2, 2022, alleging deliberate indifference to serious medical needs related to

denial of dental and medical treatment while incarcerated at Parnall Correctional

Facility (SMT) in Jackson, Michigan. *See* ECF No. 1. Following entry of several

---

[1] Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

dismissal orders, *see* ECF Nos. 1, 6, 12, 30, only defendants "Unknown King"[2] (King); Mark Cooks, D.D.S. (Dr. Cooks); Nurse Stacy Lindahl (Lindahl); and John Doe remain.  All pretrial matters have been referred to the undersigned under 28 U.S.C. § 636(b)(1).  (ECF No. 21).

Before the Court are motions for summary judgment on the grounds that Merrill failed to exhaust his administrative remedies filed by King and Dr. Cooks (MDOC Defendants), (ECF No. 20), and Lindahl. (ECF No. 23).  The motions have been fully briefed.  (ECF Nos. 25, 26, 28, 29).  For the reasons that follow, the undersigned RECOMMENDS that both motions be DENIED.

## II.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

---

[2] King is identified by defendants as Michigan Department of Corrections (MDOC) Health Unit Manager (HUM) King.

"The moving party has the initial burden of proving that no genuine issue of material fact exists...." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Merrill is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

### III.    Discussion

#### A.    Exhaustion of Administrative Remedies

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly"

3

exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)."  *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted).  Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record.  *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."  *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).  But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so."  *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015).  Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal

without prejudice.  *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve

prisoner grievances.  "Under the [Michigan] Department of Corrections'

procedural rules, inmates must include the '[d]ates, times, places and names of all

those involved in the issue being grieved' in their initial grievance."  *Reed-Bey v.*

*Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  As noted by the Court in

*Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ]

prisons with a fair opportunity to correct their own errors."  *Woodford*, 548 U.S. at

94.  To be sufficient, a grievance need not "allege a specific legal theory or facts

that correspond to all the required elements of a particular legal theory."  *Burton v.*

*Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles*

*by Jones v. Bock*, 549 U.S. 199 (2007).  Nonetheless, the grievance must give "fair

notice of the alleged mistreatment or misconduct that forms the basis of the

constitutional or statutory claim made against a defendant in a prisoner's

complaint."  *Id.*

Under MDOC Policy Directive 03.02.130, prisoners must provide the

following information at Step I of the grievance process: "The issues should be

stated briefly but concisely.  Information provided is to be limited to the facts

involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates,

times, places, and names of all those involved in the issue being grieved are to be

included." MDOC PD 03.02.130 ¶ S (underlining omitted).

Furthermore, MDOC Policy Directive also 03.02.130 sets forth time limits regarding the three-step grievance process.

> Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, and then may file a Step I grievance about any unresolved issues with a grievance coordinator within five business days of the attempted informal resolution. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same procedure. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.

*Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *3 (E.D. Mich. July 18, 2022) (internal citations omitted). "Step III grievances are 'generally' responded to within sixty (60) days." *Johnson v. Burt*, No. 1:20-cv-802, 2021 WL 3476449, at *3 (W.D. Mich. June 14, 2021), *report and recommendation adopted*, 2021 WL 3473483 (W.D. Mich. Aug. 6, 2021) (citing MDOC PD 03.02.130 ¶ II). "The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

## B.   The MDOC Defendants

The MDOC Defendants have attached Merrill's Step III Grievance Report to

their motion, which contains every grievance filed by Merrill at SMT that has been responded to at Step III of the grievance procedure.  (ECF No. 20-3).  Grievances that do not appear on the report have not been exhausted.  Furthermore, the report indicates whether each grievance at Step III was "denied" or "rejected."  A grievance that has been explicitly rejected for a procedural reason and therefore not decided on its merits, is unexhausted.  *See Reeves v. Salisbury*, No. 11-CV-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012), *report and recommendation adopted in relevant part*, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012).

Merrill has filed through Step III three grievances applicable to the claims in his complaint, identified by grievance markers SMT-441, SMT-1347, and SMT-901.[3]  The MDOC Defendants argue that these grievances do not exhaust the administrative remedies available for Merrill's claims because they were rejected for explicitly for procedural reasons.  Each grievance is addressed in turn below.

### 1.  SMT-441

This grievance was filed on April 17, 2021, and pertained to events that occurred on the day before.  (ECF No. 20-3, PageID.127).  In a three-page letter attached to the grievance at Step I, Merrill explained that he was specifically grieving "Dr. Cook[s]" and "HUM King" for their failure to provide him with

---

[3] Defendants also note three other grievances, SMT-388, SMT-270, and SMT-232. These grievances are not related to the issues in this case and therefore need not be discussed.

dentures in a timely manner, resulting in several symptoms including severe jaw pain. (*Id*., PageID.130-132). At Step I, the grievance office staff determined that the grievance pertained to the same issue as a previous grievance and was therefore rejected for being duplicative of the prior grievance. *See* MDOC PD 03.02.130 ¶ J(2), ECF No. 20-2, PageID.112 ("A grievance shall be rejected by the Grievance Coordinator if . . . [i]t raises issues that are duplicative of those raised in another grievance filed by the grievant.").

At Step II, Merrill vehemently denied that he had filed a prior grievance on this issue or against King, stating, "Reason for Denial is false . . . this is the first Grievance[] Grievant has ever filed against HUM KING!!! HUM KING is []Self Diagnosing Grievant, and denying him a proper Diagnosis or Treatment) Grievant was never Diagnosed with TMJ as HUM KING Falsely stated." (ECF No. 20-3, PageID.125). On review, the grievance coordinator and deputy warden upheld the prior decision, stating that Merrill's "grievance was rejected at Step I for being duplicative of another grievance with an unknow[n] identifier." (*Id*., PageID.126).

In his Step III appeal, Merrill again insisted that he had not filed a previous grievance on these issues and that this is why the supposed grievance had an unknown identifier, a position that he maintains in his response to Defendants' motion. (*Id*., PageID.125). The rejection was upheld without explanation at Step III. (*Id*., PageID.124).

While it is true that a grievance must follow MDOC's procedural rules to satisfy the exhaustion requirement, "the Court is not required to blindly accept the state's application of the procedural rule." *Reeves v. Salisbury*, 2012 WL 3206399, at *5. Exhaustion of administrative remedies means "using all steps that the agency holds out, and doing so properly." *Woodford*, 548 U.S. at 90; *see also Williams v. Winn*, No. 18-11060, 2019 WL 2252012 at *6 (E.D. Mich. Feb. 27, 2019) ("The rejection of a grievance is not, however, the end of the analysis. It is appropriate for the Court to review the prison official's administration of the state grievance procedure."), *report and recommendation adopted*, 2019 WL 1417166 (E.D. Mich. Mar. 29, 2019).

"When a grievance is rejected as duplicative, the court must look through that grievance to the prior grievance or grievances filed by the prisoner." *Snider v. Schmidt*, No. 2:19-CV-00134, 2020 WL 7049387, at *4 (W.D. Mich. Aug. 12, 2020), *report and recommendation adopted*, 2020 WL 6253699 (W.D. Mich. Oct. 23, 2020). Here, it is not possible for the Court to determine whether SMT-441 was *properly* rejected as duplicative, as there is no prior grievance to compare to it. Further, a jury could believe that no such prior grievance existed where the MDOC Defendants could not locate or identify it. Thus, as the record currently exists, the MDOC Defendants have not met their burden to show that Merrill failed to exhaust his administrative remedies as to his claims raised in SMT 441.

## 2.  SMT-1347

As to this grievance, the MDOC Defendants simply state that it "did not exhaust any claims because it was rejected at Step I for failure to resolve, and the rejection was affirmed through Step III."  (ECF No. 20, PageID.106).  However, as stated above, "the Court is not required to blindly accept" this contention.  *Reeves v. Salisbury*, 2012 WL 3206399, at *5.

This grievance was filed on November 15, 2020, and as Merrill notes, he filed three kites[4] on or before that date requesting medical services that were the subject of this grievance.  *See* ECF No. 20-3, PageID.167, 168, 169, 175.  The MDOC Defendants do not address whether the rejections were proper in their motion, nor did they file a reply to address Merrill's argument that he did in fact attempt to resolve the issue prior to grieving it.  As such, they have waived such an argument.  *See Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived.").  Accordingly, the MDOC Defendants have not met their summary judgment burden to show that Merrill failed to exhaust the claims raised in SMT-1347.

---

[4] A "kite" is a form that allows inmates to communicate and get information about "just about anything," including court dates, visitors, lawyers' information, requests, complaints, or medical assistance.  *See*, *e.g*., *Meirs v. Ottawa Cnty*., 821 F. App'x 445, 448 (6th Cir. 2020).

### 3. SMT-901

Similar to SMT-441, the MDOC Defendants argue that this grievance does not exhaust Merrill's claims because it was rejected as duplicative at all three steps of the grievance process. Here, the grievance that SMT-901 is said to be duplicative of was identified as SMT-885. This prior grievance was not on the Step III Grievance Report; therefore, the MDOC Defendants contend, it was not exhausted, and neither was SMT-901. To exhaust these claims, they say, Merrill would have had to take SMT-885 through Step III and see that it was properly addressed on the merits.

Merrill contends that exhaustion of the prior grievance was rendered impossible by the law library's closure for weeks during the pendency of that grievance's claims. (ECF No. 25, PageID.268). "A prisoner need not exhaust remedies if they are not 'available.' " *Ross v. Blake*, 578 U.S. 632, 636 (2016). More to the point, however, Merrill has attached SMT-885 to his response, so the Court can determine whether the later grievance, SMT-901, was duplicative of SMT-885. (ECF No. 25, PageID.319). The undersigned finds that it is not.

SMT-885, the prior grievance, complains of his lack of medical treatment, but specifically pertains to a nursing consultation on July 1, 2020, stating,

> I was called-out to medical and was <u>merely interviewed</u> by health care <u>nurse</u> whom informed me to eat softer foods. This did not in any way address my "raw and cut up gums" which continue to cause bleeding and excruciating pain. This issue is <u>not ROUTINE</u> and is an emergent

11

issue perhaps even URGENT!

 (*Id*.) (emphasis in original).  He added that his health continued to decline without medical care.  (*Id*.).  In contrast, SMT-901, the grievance at issue, pertains to a consultation on July 29, 2020, where he was "seen by SMT 'DENTAL' for a scheduled consultation per MDOC Kite Response (7-28-20) regarding both 'dentures' (which have NOT been fitted previously), i.e. inquiring into when I'll receive the dentures . . . I was also informed I am LAST ON THE FITTING SCHEDULE."  (ECF No. 20-3, PageID.180).  He also complained of the sores and cuts on his gums and the popping of his jaw, all of which were exacerbated by his lack of dentures.  (*Id.*).

On its face, SMT-901 is not duplicative of SMT-885.  First, it grieves a lack of medical care beyond the date that SMT-885 was filed, including the lack of care on a different date at a consultation with a separate division of SMT (dental vs. medical).  Second, SMT-885 did not reference being fitted for dentures or Merrill's placement on the fitting schedule.  The MDOC Defendants did not address these points in their motion, nor did they provide a copy of SMT-885 for the Court's consideration or file a reply brief.  Overall, the MDOC Defendants have not carried their summary judgment burden that the claims raised in SMT-901 were not properly exhausted.

C.    Lindahl

12

Lindahl argues that Merrill did not exhaust his claims against her because she was not named in any of his grievances that were resolved at Step III. [5]  Merrill responds that his November 15, 2020 grievance, SMT-1347 (discussed above) provided fair notice of claims against Lindahl.[6]

That grievance form states that the date of incident was also November 15, 2020, (ECF No. 23-1, PageID.233) but the attached letter, (*id*., PageID.245), refers to a kite written on November 4, 2020, (*id*., PageID.237), in which he asked to see "Dr. Lindol (not sure of name spelling)" [7] for these issues.  The letter also refers to an eventual visit with a different nurse on November 11, 2020, who he claims did not provide him with proper medical treatment.  (*Id*., PageID.245).  Merrill acknowledged in a letter attached to his Step III grievance that he was eventually seen by Lindahl on November 23, 2020, after which he was sent for x-rays but

---

[5] Lindahl notes four Step III grievances: SMT-441, SMT-232, SMT-901, and SMT-1347.  As Merrill argues only that SMT-1347 exhausted his claims against Lindahl, the others need not be discussed.

[6] Merrill also argues that at the time this grievance was filed, his access to the law library and MDOC Policy Directives was limited.  (ECF No. 29, PageID.359).  The Court declines to consider this argument because it was raised in an unauthorized sur-reply, *see* Local Rule 7.1(c)(3), and because arguments made for the first time in a reply (or sur-reply) brief are generally considered waived.  *Frank v. U.S. Food & Drug Admin.*, 998 F.Supp.2d 596, 602 (E.D. Mich. 2014) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)).

[7] Merrill refers to Lindahl in these kites and his motions as his doctor, though she is a nurse practitioner with MDOC medical staff.

otherwise not treated. (*Id.*, PageID.243-244). He argues that his reference to "MDOC Medical" in his Step I grievance, (*id.*, PageID.233), should suffice to exhaust his claims against Lindahl, as she was his primary medical provider, and that filing another grievance after being seen by Lindahl on November 23, 2020 would have been futile, as MDOC would have rejected it for being "duplicative."

"[A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief." *Mattox v. Edelman*, 851 F.3d 583, 590–91 (6th Cir. 2017) (citing *Reed–Bey*, 603 F.3d at 324–25). "An exception to this rule is that *prison officials waive any procedural irregularities* in a grievance when they nonetheless address the grievance on the merits." *Id*. (emphasis added).

The undersigned agrees that the references to his doctor and "MDOC Medical" would not normally exhaust claims against a treating provider who is a nurse practitioner. "Such generic labels are insufficient to constitute exhaustion against [the defendant]." *Harp v. Austin*, No. 21-12446, 2022 WL 3365844, at *4 (E.D. Mich. July 19, 2022), *report and recommendation adopted*, 2022 WL 3362505 (E.D. Mich. Aug. 15, 2022) (citing *Boles v. Aramark Corr. Servs., LLC*, 2018 WL 3854143, at *2 (6th Cir. 2018)). Furthermore, Merrill's kites were responded to by other nurses (Joshua Wright and Cynthia Brzyski), (ECF No. 23-1,

PageID.237-240), making it unclear that Merrill intended to grieve Lindahl without reference to her name or title.

However, "[b]ecause prison officials did not actually rely upon the procedural rule to bar review of the grievance, they cannot invoke the default against Plaintiff." *Contor v. Caruso*, No. 1:07-CV-303, 2008 WL 878665, at *8 (W.D. Mich. Mar. 28, 2008) (citing *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005); *Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004)); *cf. Dixon v. Burge*, No. 07-CV-14799-DT, 2009 WL 1508383, at *2 (E.D. Mich. May 29, 2009) (where Step I response rejected grievance for a different procedural defect, but Step III response rejecting grievance for the applicable procedural defect did not constitute waiver).

Here, Merrill's SMT-1347 grievance was rejected *for failure to attempt to resolve the issue before filing the grievance*. Lindahl does not argue whether this rejection was proper. The grievance was *not* rejected for failure to name the individual involved or for vagueness, generally, which are the grounds Lindahl argues to show the grievance was not properly exhausted. *See* ECF No. 23-1, PageID.234. Further, as discussed above with regard to the MDOC Defendants, there is a genuine issue of material fact as to the propriety of the rejection for failure to resolve. Therefore, although Lindahl may not have had notice of Merrill's claim through this grievance, Merrill's failure to name Lindahl in the

grievance does not render the grievance unexhausted as to her.  The MDOC did not

reject Merrill's grievance for failure to provide names, resulting in waiver of this

defense.  *Contor*, 2008 WL 878665, at *8.

As to events occurring after the filing of the grievance, Lindahl is correct

that a subsequent grievance containing these issues would not have *properly* been

rejected as "duplicative":

> In order to be rejected as duplicative, any grievance filed by Plaintiff
> would have to contain the same contents as a previously filed grievance.
> In this case, Plaintiff would have to file another grievance alleging that
> he was not called out in a timely matter to see N.P. Lindahl.  In contrast,
> if Plaintiff had actually grieved the alleged denial of care by N.P.
> Lindahl, the grievance would have had to contain a different set of facts,
> including who was grieved and the incident date.

(ECF No. 28, PageID.355-356).  But as noted above, Merrill had already had

another grievance that he filed months earlier (SMT-901) improperly rejected as

duplicative.  There, the prior grievance (SMT-885) referred to a different

consultation, on a different date, with a different provider than SMT-901.

"A prisoner need not exhaust remedies if they are not 'available.' "  *Ross*,

578 U.S. at 636.  "[A]n administrative procedure is unavailable when (despite what

regulations or guidance materials may promise) it operates as a simple dead end—

with officers unable or consistently unwilling to provide any relief to aggrieved

inmates."  *Id*. at 643.  "When the facts on the ground demonstrate that no such

potential exists, the inmate has no obligation to exhaust the remedy."  *Id*.

As explained above, Merrill has filed three grievances that were rejected for reasons that are problematic at best.  In particular, SMT-901 was rejected as being duplicative of SMT-885, despite complaining of treatment from a different provider on a different date.  This raises the question of whether Merrill had any available remedy as to his treatment by Lindahl on November 23, 2020, or whether such a grievance would have been rejected as duplicative of his prior treatment for the same issues from a different nurse on November 11, 2020.  Thus, as to Lindahl, there is a genuine issue of fact as to whether Merrill had an available administrative remedy for his complaints about Lindahl's medical treatment.  As such, Lindahl is not entitled to summary judgment based on Merrill's failure to exhaust his administrative remedies.

### IV.   Conclusion

For the reasons stated above, the undersigned RECOMMENDS that Defendants' motions for summary judgment, (ECF Nos. 20, 23), on the basis of non-exhaustion be DENIED.

Dated: December 21, 2022                          s/Kimberly G. Altman
Detroit, Michigan                                        KIMBERLY G. ALTMAN
                                                                United States Magistrate Judge


**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 21, 2022.

s/Carolyn M. Ciesla
CAROLYN M. CIESLA
Case Manager
