UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER SCOTT MERRILL,

    Plaintiff,

v.

    Case No. 22-cv-10541
    Honorable Linda V. Parker

GRETCHEN WHITMER, et al.,

    Defendants.
_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR REASONABLE ACCESS TO COUNSEL (ECF NO. 54)

On March 2, 2022, Plaintiff filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiff is a Michigan Department of Corrections ("MDOC") prisoner currently incarcerated at the Central Michigan Correctional Facility ("STF") in St. Louis, Michigan. He claims that Defendants acted with deliberate indifference to a serious medical condition by denying him treatment for a dental condition while he was incarcerated at MDOC's Parnell Correctional Facility ("SMT") in Jackson, Michigan. The action remains pending against only Health Unit Manager FNU King, Mark Cooks, D.D.S., Nurse Stacy Lindahl, and John Doe (hereafter "Defendants"). HUM King and Dr. Cooks are MDOC employees; Nurse Lindahl was employed by Corizon Health, Inc. ("Corizon"), which previously contracted with MDOC to provide healthcare to inmates.

On May 1, 2023, this Court granted Plaintiff's motion for appointment of counsel. (ECF No. 50.) A week later, attorney Frank J. Lawrence Jr. was appointed to represent Plaintiff. (ECF No. 51.) At a telephonic status conference held shortly thereafter, Attorney Lawrence complained that MDOC policy was interfering with his access to his client. On June 14, 2023, Plaintiff filed a motion asking the Court to issue an order requiring MDOC, a non-party to this action, to provide him with reasonable access to his assigned counsel. (ECF No. 54.) The motion has been fully briefed, including Defendants' filing of a sur-reply. (ECF Nos. 56-60.)

### Background

MDOC contracts with a thirty party vendor to schedule in-person visitation with prisoners, and to schedule, place, and monitor prisoner telephone calls. (*See* ECF No. 56-8 at PageID. 876, ¶¶ 5, 6.) MDOC has been using a third-party provider for prisoner telephone services since at least 2017. (*Id.* ¶ 5.) Currently, that third-party vendor for telephone services and visitation is ViaPath, which was formerly known as Global Tel*Link Corp. ("GTL").[1] (*Id.*)

Attorney Lawrence has represented many MDOC prisoners in civil rights lawsuits on a pro bono basis since November 2017. (*See* ECF No. 54-2 at PageID.

---

[1] The parties continue to refer to the vendor as GTL, and so the Court will do so too.

757, ¶ 3.) Prior to the Covid-19 pandemic, he scheduled all in-person client visits and telephone calls by contacting prison officials—usually the warden's assistant for the particular facility where his client was housed. (*Id.* ¶ 4.) There was no charge for in-person visits or telephone calls. (*Id.* at PageID. 758, ¶ 6.) While MDOC suspended in-person visits during the pandemic, telephone calls continued and were scheduled in the same manner as before. (*Id.* ¶ 7.) And after his appointment as counsel in the current matter, Attorney Lawrence was able to schedule a telephone call with Plaintiff for May 8, 2023, using the same procedure. (*Id.* ¶ 8.) However, when Attorney Lawrence attempted to arrange a subsequent call with Plaintiff, he was informed by prison officials that all visits and phone calls must be scheduled through GTL, unless the attorney is associated with Michigan's State Appellate Defenders Office ("SADO"). (*Id.* at PageID. 758-59, ¶¶ 9, 11.)

To use GTL, an individual first must open a GTL account, which requires accepting its "Terms of Use" and "Privacy Policy." (*Id.* at PageID. 759, ¶ 10; s*ee also* ECF Nos. 54-2, 54-3.) Attorney Lawrence takes issue with several conditions and concessions required under both provisions. (*See* ECF No. 54 at PageID. 737.) For example, a user must release GTL from any damages, losses, or liabilities arising from the use of its services. (*See* ECF No. 54-3 at PageID. 767, ¶ 17.) Further, a user must release GTL, "its affiliates, employees, contractors and agents,

all applicable Law Enforcement Officials and the correctional facility from all liability which may result from use of GTL's websites and services and use of data. (*See* ECF No. 54-4 at PageID. 781.)

Users must agree to indemnify GTL from and against any claims, damages, and costs arising from the use of its service. (ECF No. 54-3 at PageID. 767-68, ¶ 21.) While the conditions provide an exception to the indemnification provision for GTL's "negligent conduct[,]" it does not include intentional conduct, constitutional violations, or fraud. (*Id.*) GTL's terms of use also contain a mandatory arbitration provision. (*Id.* at PageID. 768, ¶ 22.) While users can opt out of this requirement, this may result in the termination of the user's account— and thus that individual's ability to arrange visits and calls. (*Id*. ¶ 22(d).)

GTL warns users that it collects extensive personal information (e.g. birth date, physical and email addresses, Internet Protocol address for the computer or mobile device used, location of the phone used, and credit card or other financial information) and may share that information with the facility and unaffiliated third parties. (ECF No. 54-4 at PageID. 772-73.) GTL further warns users that its website uses cookies that allow GTL to identify "the websites you visit before or after visiting [its] [s]ite." (*Id.*) And while the user can attempt to reject cookies, GTL does not guarantee that they always will be blocked. (*Id*. at PageID. 773.)

4

MDOC policy requires its telephone service providers to be able to monitor prisoner telephone calls (*see* ECF No. 56-5 at PageID. 845), and GTL warns users that any calls, video visits, and electronic messages (including email) through its service are monitored and recorded (ECF No. 54-3 at PageID. 766). Telephone calls from a prisoner to his or her attorney's business telephone number are excepted from monitoring, but only if prison staff have verified the attorney's telephone number.[2]  (ECF No. 56-5 at PageID. 848-49.)

By using GTL, calls between an attorney and a prisoner are now subject to a per-minute charge (effective October 1, 2023, the rate of non-international calls is $0.0735 per minute).  See https://perma.cc/SA7F-CTU3.  Plaintiff, who is indigent, is unable to pay a per-minute charge for attorney phone calls.  (ECF No. 54 at PageID. 740.)  The District does not allow for reimbursement of these fees if the calls are made from Attorney Lawrence's office.  https://perma.cc/7SR2-PDV7.

**Parties' Arguments**

Plaintiff maintains that MDOC's telephone and visitation policies violate his First Amendment right to reasonable access to his assigned counsel.  He, therefore, requests an injunction ordering MDOC to provide at least two one-hour phone calls per month (without charge) and two in-person visits per month (without

---

[2] Yet GTL is responsible for monitoring telephone calls, and if it fails to adhere to this exception for attorney-client calls, there may be no recourse against GTL or MDOC under GTL's terms and conditions.

charge), scheduled without going through GTL. Plaintiff argues that the Court can order MDOC to do so, even though it is not a party to this action, because it is indemnifying and defending HUM King and Dr. Cooks and, Plaintiff claims, courts have the power to issue injunctions against litigants who harass their opponents.

Defendants dispute that MDOC's telephone and visitation policies violate Plaintiff's rights. Defendants maintain that using a third-party vendor to manage prisoner visitations and phone calls serves a legitimate penological interest. Defendants further maintain that the restrictions on inmate telephone privileges are reasonable. Defendants point out that Plaintiff has alternative means of contacting his attorney: he can call counsel (which does not require going through GTL) and he can write counsel. And, Defendants argue, Plaintiff fails to address and cannot satisfy the requirements for injunctive relief: (1) substantial likelihood of success on the merits; (2) whether the injunction is necessary to protect Plaintiff from irreparable injury; (3) whether the injunction will harm others; and (4) whether the public interest will be served by the injunction. *See United States v. Szoka*, 260 F.3d 516, 523 (6th Cir. 2001).

In any event, Defendants also argue that the Court is without power to enter an injunction against MDOC, a non-party, even if MDOC might indemnify HUM King and Dr. Cooks if they are found liable. Defendants further argue that the Court lacks power to enter an injunction concerning an issue not raised in

6

Plaintiff's Complaint. The proper vehicle to challenge MDOC's telephone and visitation policies, Defendants maintain, is a separate lawsuit.

In reply, Plaintiff invokes the All Writs Act (also "Act"), 28 U.S.C. § 1651, as a source of power to order MDOC to provide the requested relief. Plaintiff also challenges Defendants' asserted penological interests for mandating the use of GTL to schedule calls and visits. Defendants sought and were granted leave to file a sur-reply to address Plaintiff's reliance on the All Writs Act, which they argue is inapplicable.

## Applicable Law and Analysis

### Injunctive Relief Under Federal Rule of Civil Procedure 65

"It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)); *see also Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996); *Martin v. Wilks*, 490 U.S. 755, 761 (1989); *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 110 (1969). This principle is based on the "deep-rooted historic tradition that everyone should have his [or her] own day in court." *Taylor*, 553 U.S. at 892-93 (quoting *Richards*, 517 U.S. at 798). It is reflected generally in

the list of those who may be bound by an injunction in Federal Rule of Civil Procedure 65. *See* Fed. R. Civ. P. 65(d)(2).

The rule states that the following persons are bound by an injunction upon actual notice by personal or other service:

> (A) the parties;
>
> (B) the parties' officers, agents, servants, employees, and attorneys; and
>
> (C) other persons who are in active concert or participation with anyone described in [subsections] (A) or (B).

Fed. R. Civ. P. 65(d)(2). Subsection (B) reflects the well-established principal that "[a] command to [a] corporation is in effect a command to those who are officially responsible for the conduct of its affairs." *Elec. Workers Pension Trust Fund of Local Union No. 58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 380 (6th Cir. 2003) (quoting *Wilson v. United States*, 221 U.S. 361, 376 (1911)). This subsection is inapplicable here.

As to subsection (C), the Supreme Court has explained that it

> is derived from the commonlaw doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in "privity" with them, represented by them or subject to their control. In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.

8

*Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945); *see also United States v. Elsass*, 769 F.3d 390, 398 (6th Cir. 2014) (quoting *Regal Knitwear*); Mary Kay Kane, *Fed. Practice & Proc.* § 2956 (3d ed.). Thus, this subsection is targeted at persons who might frustrate or interfere with an injunction issued against a party—that is, they "are guilty of aiding or abetting or acting in concert with a named defendant or the defendant's privy in violation of the injunction." *Fed. Practice & Proc.* § 2956; *see also Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179-80 (1973) (citing *Regal Knitwear*, 324 U.S. at 14); *Avant Cap. Partners, LLC v. Strathmore Dev. Co. Mich., LLC*, 703 F. App'x 362, 373-74 (6th Cir. 2017).

Additionally, as the Supreme Court has explained, an injunction is appropriate to grant relief of "the same character as that which may be granted finally," but it is inappropriate where the injunction "deals with a matter lying wholly outside of the issues in suit." *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945); *see also Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010) (holding that the plaintiff's "request for reinstatement in the [prison's] kosher-meal program was improper because he did not bring his wrongful-removal claim in his original complaint"); *Libertas Classical Assoc. v. Whitmer*, No. 20-2085, 2020 WL 6886262, at *2 (6th Cir. Nov. 20, 2020). As the Sixth Circuit further explained in *Colvin*: "A party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's

9

motion and the conduct asserted in the complaint." 605 F.3d at 300 (brackets omitted) (quoting *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994)). The reason for this requirement is that "the purpose of interim equitable relief is to protect the movant, during the pendency of the action, from being harmed or further harmed in the manner in which the movant contends he was or will be harmed through the illegality alleged in the complaint." *Id.* (brackets omitted) (quoting *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997)).

Because MDOC is not among the persons who may be bound under Rule 65, and because Plaintiff does not seek injunctive relief related to the conduct asserted in his Complaint, the Court concludes that injunctive relief pursuant to Rule 65 is improper.

## The All Writs Act

Under the All Writs Act, federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even

10

those who have not taken any affirmative action to hinder justice." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (internal and end citations omitted).

In *New York Telephone*, the Supreme Court cited to its prior decision in *United States v. Hayman*, 342 U.S. 205 (1952), as an example of how the power conferred in the All Writs Act has been exercised. In *Hayman*, the Court relied on the Act as a mechanism to order prison officials to transfer a defendant from his district of incarceration to the district where he was sentenced for an evidentiary hearing on the defendant's post-conviction motion under 28 U.S.C. § 2255. 342 U.S. at 221. District courts have recognized the authority conferred by the All Writs Act to issue injunctions "in cases where prison officials, not named as defendants, allegedly have taken action that impedes a prisoner's ability to litigate his [or her] case"—even if some of those courts have chosen not to use that power under the circumstances presented. *Aldrich v. Romo*, 493 F. Supp. 3d 853, 856-57 (C.D. Cal. 2020) (quoting *Espey v. Deuel Vocational Inst.*, No. 2:13-cv-2147, 2014 WL 2109949, at *2 (E.D. Cal. May 20, 2013), *report & recommendation adopted*, 2014 WL 2873207 (E.D. Cal. June 25, 2014)) (employing the Act when ordering state prison warden to arrange up to one weekly confidential phone call between the plaintiff and her counsel); *United States v. Loera*, No. 09-cr-00466, 2017 WL 4675773, at *3 (E.D.N.Y. Oct. 17, 2017) (ordering prison to implement modifications to room where counsel could visit the defendant to facilitate trial

11

preparation); *Baker v. Perez*, No. 09-cv-2757, 2014 WL 4275925, at *2-3 (E.D. Cal. Aug. 29, 2014) (recognizing the power under the Act to issue an order against non-parties); *Lopez v. Cook*, No. 2:03-cv-1605, 2014 WL 1488518, at *4 (E.D. Cal. Apr. 15, 2015) (ordering prison facility to allow the plaintiff contact visits with his attorneys); *Turner v. Sacramento Cnty. Sheriff*, No. 2:09-cv-0017, 2010 WL 4237023, at *1 (E.D. Cal. Oct. 21, 2010) (recognizing the power of the Act to enjoin interference by non-party prison officials); *Johnson v. Sullivan*, No. 1:06-cv-01089, 2008 WL 5396614, at *7 (E.D. Cal. Dec. 23, 2008) (granting a request for injunctive relief directing State officials to provide the plaintiff weekly 60-minute telephone calls with his counsel based on showing that prison officials were depriving him of those calls).

Defendants point out that the district court decisions cited by Plaintiff in support of employing the All Writs Act were issued by California district courts—most from the Eastern District and four from the same magistrate judge. This is correct. Nevertheless, it is the *United States Supreme Court* that concluded the Act confers the power on a court to issue an order against nonparties whose conduct "frustrate[s] . . . the proper administration of justice." *See supra*. The Act may provide the only source of relief where prison officials are infringing a prisoner's constitutional rights by frustrating the prisoner's access to counsel and/or the courts, the latter perhaps by interfering with the prisoner's access to counsel. *See*

*Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (citing cases) ("It is well established that prisoners have a constitutional right of access to the courts" and explaining that this right "extends to direct appeals, habeas corpus applications, and civil rights claims only"). In some instances, the potential relief that may become available through another avenue, such as a separate civil rights action pursuant to 42 U.S.C. § 1983, may come too late to protect the prisoner's rights. The Court finds that to be the case here.

A civil rights action is undoubtedly an available avenue for Plaintiff and/or Attorney Lawrence to challenge MDOC's telephone and visitation policy. However, Attorney Lawrence needs reasonable access to Plaintiff now, to move forward with this litigation—litigation which has been pending for two years and alleges ongoing and allegedly unaddressed dental pain suffered by Plaintiff. The Court finds that Plaintiff does not have reasonable access to his counsel to prosecute this civil rights action under the present circumstances.

Defendants argue that Attorney Lawrence can avoid accepting GTL's terms and conditions by having Plaintiff call him. But Plaintiff is an indigent prisoner who has been assigned pro bono counsel. MDOC's telephone policy does not offer indigent prisoners a waiver from the fees charged for attorney telephone calls.

Defendants cite a number of cases for the proposition that "prisoners are not entitled to a specific rate for their telephone calls." (ECF No. 56 at PageID. 809-

13

810 & n.7 (citations omitted).)  However, many of these cases did not confront the issue of an indigent prisoner's right of telephone access in connection with his or her right to counsel and/or the courts.  Further, the decision to uphold the rates charged in those cases was premised on a finding that other reasonable access was available.

Attorney Lawrence cannot schedule a call or visit with Plaintiff unless he agrees to GTL's terms and conditions.[3]  His unwillingness to do so is not unreasonable.  Future litigation may lead to the conclusion that the requirement, or perhaps some of GTL's terms and conditions and/or privacy policy, are unlawful. Defendants maintain that communication via the U.S. mail is an option; however, this is not a "reasonable" method for attorneys and their clients to have the conversations necessary during litigation or where litigation deadlines demand an attorney's quick access to his or her client, or vice versa.

Defendants maintain that MDOC's use of GTL serves important penological interests.  (*See* ECF No. 56 at PageID. 813-814; ECF No. 56-8 at PageID. 877.) However, MDOC makes an exception for certain parties seeking to communicate with inmates, including individuals from SADO.  Adding Attorney Lawrence to

---

[3] It is worthwhile to note that the prison facility where Plaintiff is incarcerated is approximately two hours from Attorney Lawrence's office.

this list for the limited purpose of communicating with Plaintiff for purposes of the pending civil rights litigation will not impede those interests.

## Conclusion

For these reasons, Plaintiff's motion for reasonable access is **GRANTED**. While this litigation is pending, MDOC shall allow Attorney Lawrence to arrange two, one-hour telephone calls and two visits with Plaintiff, each month, both without charge and without the requirement to utilize GTL. MDOC should propose a reasonable protocol for Attorney Lawrence to schedule these communications.

**IT IS SO ORDERED**.

                                                          s/ Linda V. Parker
                                                          LINDA V. PARKER
                                                          U.S. DISTRICT JUDGE

Dated: March 18, 2024